LUCY HIEBLE *v.* ARMIN R. HIEBLE

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, Js.

57

Argued October 5—decided November 8, 1972

*William F. Gallagher,* with whom, on the brief, was *Alan Silver,* for the appellant (defendant).

*John F. Wynne,* for the appellee (plaintiff).

SHAPIRO, J. In this action the plaintiff sought a reconveyance of real property in the town of Killingworth which she had transferred to the defendant, claiming that he had agreed to reconvey the same to her, upon request, if she recovered from an illness. The trial court rendered judgment for the plaintiff and the defendant has appealed.

The trial court's finding of facts, which is not attacked, discloses that on May 9, 1959, the plaintiff,

without consideration, transferred the title of her real estate by survivorship deed to her son, the defendant, and to her daughter. The plaintiff, who had that year undergone surgery for malignant cancer, feared a recurrence but believed that she would be out of danger if the cancer did not reappear within five years. She and the grantees orally agreed that the transfer would be a temporary arrangement; that she would remain in control of the property and pay all expenses and taxes; that once the danger of recrudescence had passed, the defendant and his sister would reconvey the property to the plaintiff on request. After the transfer, the plaintiff continued to reside on the property with her aged mother, whom she supported, her daughter and the defendant. In 1960, after the plaintiff expressed displeasure over the daughter's marriage, the daughter agreed to relinquish her interest in the property. A deed was prepared and the daughter and son, through a strawman, transferred title to the land to the plaintiff and her son in survivorship. In 1964, five years after the original conveyance, the plaintiff requested that the defendant reconvey his legal title to her, since she considered herself out of risk of a recurrence of cancer.

The plaintiff at that time needed money to make improvements on the land, particularly to install running water and indoor plumbing facilities as a convenience for her aged mother. The defendant procrastinated, feigning concern about the boundaries of an adjacent forty-acre parcel which the plaintiff had given him in 1956. Although the defendant refused to convey his interest in the jointly-owned premises, some friends of the plaintiff ultimately prevailed on him to sign a mortgage for an improvement loan in 1965. Thereafter, the defend-

ant assured the plaintiff that he would never marry but would continue to live with her. These were his reasons for refusing reconveyance until his marriage plans were disclosed. Although the plaintiff proposed that her son could keep the property if he remained single, he did marry in 1967 and moved out of the house. After her attempts to obtain his voluntary reconveyance failed, the plaintiff brought suit in 1969. Throughout the entire period of time material to this litigation, the plaintiff has borne all expenses and costs of improvement to the property.

From these facts the trial court concluded that a constructive trust[1] should be decreed on the basis of the oral agreement, the confidential relationship of the parties and their conduct with respect to the property. The defendant's appeal raises primarily the claim that the elements necessary to establish a confidential relationship, as the basis for a constructive trust, are lacking.

It hardly needs reciting that under our Statute of Frauds, General Statutes § 52-550, oral agreements concerning interests in land are unenforceable. See *Hanney* v. *Clark*, 124 Conn. 140, 144-45, 198 A. 577. In this jurisdiction, however, the law is established that the Statute of Frauds does not apply to trusts arising by operation of law. *Reynolds* v. *Reynolds*, 121 Conn. 153, 158, 183 A. 394; *Ward* v. *Ward*, 59 Conn. 188, 196, 22 A. 149.

---

[1] Although the trial court and the parties refer to a "parol trust" and to a "parol (constructive) trust," our courts have never used this term. The proper nomenclature is "constructive trust"; "parol" relates, of course, to the underlying oral agreement unenforceable because of the Statute of Frauds. It is helpful to recall, as did the court in *King* v. *Uhlmann*, 103 Ariz. 136, 144, 437 P.2d 928, that a constructive trust is not a legal relationship but an equitable remedy, whereas an express oral trust does constitute a legal relationship.

The case before us presents one of the most vexatious problems facing a court of equity in the area of constructive trusts, namely, whether equity should impose a constructive trust where a donee who by deed has received realty under an oral promise to hold and reconvey to the grantor has refused to perform his promise. See 3 Bogert, Trusts and Trustees (2d Ed.) § 495; Costigan, "Trusts Based on Oral Promises," 12 Mich. L. Rev. 423, 515. Our task here, however, is considerably alleviated, since the defendant has not attacked the court's finding that the alleged agreement was in fact made, nor does he contest the receipt of parol evidence as having violated the Statute of Frauds. See, for example, *Brown* v. *Brown,* 66 Conn. 493, 34 A. 490; *Todd* v. *Munson,* 53 Conn. 579, 589, 4 A. 99; *Dean* v. *Dean,* 6 Conn. 284, 287–89. Although the deed recited that consideration was given for the 1959 transfer, the defendant does not attack the finding that there was no consideration for the conveyance. Indeed, in his brief the defendant abandons the claim that a recital of consideration suffices to rebut an allegation of a trust. See *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 470, 155 A. 838. In addition, the complications typically involved in constructive trusts—for example, the claims of third parties or the testimony of deceased persons—are not present here. See the discussion in *Hanney* v. *Clark,* supra, 144–46. In this case the plaintiff was both settlor and beneficiary of the trust.

Since the finding of facts is not challenged, the conclusion of the court that the parties stood in a confidential relationship must stand unless it is unreasonably drawn or unless it involves an erroneous application of law. *Johnson* v. *Zoning Board of Ap-*

*peals,* 156 Conn. 622, 624, 238 A.2d 413; *Davis* v. *Margolis,* 107 Conn. 417, 422, 140 A. 823. The defendant's attack on this conclusion is without merit. He argues that because the plaintiff initiated the transfer and was a woman of mature years, and because he was an inexperienced young man, a court of equity should not recognize a relationship of confidentiality between them. We grant that the bond between parent and child is not per se a fiduciary one; it does generate, however, a natural inclination to repose great confidence and trust. See *Suchy* v. *Hajicek,* 364 Ill. 502, 509, 510, 4 N.E.2d 836; *Wood* v. *Rabe,* 96 N.Y. 414, 426. Coupled with the plaintiff's condition of weakness, her recent surgery, her anticipation of terminal illness, and the defendant's implicit reassurances of his faithfulness, this relationship becomes a classic example of the confidentiality to which equity will fasten consequences. See Restatement (Second), 1 Trusts § 44, pp. 115–16; 3 Bogert, supra, § 482. This principle finds implicit recognition in *Worobey* v. *Sibieth,* 136 Conn. 352, 359, 71 A.2d 80, *Hanney* v. *Clark,* 124 Conn. 140, 148, 198 A. 577, and is illustrated in *Millard* v. *Green,* 94 Conn. 597, 600, 110 A. 177, and *Fisk's Appeal,* 81 Conn. 433, 438, 71 A. 559 (applying Illinois law).

In *Worobey* v. *Sibieth,* supra, this court found no error in the trial court's refusal to impose a constructive trust on the basis of a confidential relationship. The defendant in that case had paid valuable consideration for the property, was not a relative of the plaintiff, and testified that the conveyance was intended only as an absolute deed. Although *Stewart* v. *Hooks,* 372 Pa. 542, 94 A.2d 756, cited in the defendant's brief, rejects the rule in the Restatement (Second), 1 Trusts § 44, pp. 115–16, and

is not in accord with the view taken by this court as to the criteria required for a confidential relationship, it is not to the point. There the Pennsylvania court refused to find a confidential relationship imposing a constructive trust on property devised by the plaintiff's deceased wife to a third person. Obviously, different considerations arise where the settlor of the claimed trust is deceased, or where the claimed beneficiary seeks to defeat the title of one who is a stranger to the oral agreement. See *Hanney* v. *Clark,* supra, 145.

The defendant's next contention questions the sufficiency of the evidence to justify the imposition of a constructive trust. Since he does not attack the finding that there was an underlying oral agreement, he cannot question the sufficiency of evidence to support that finding. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190; *Davis* v. *Margolis,* 107 Conn. 417, 422, 140 A. 823. Presumably, the defendant objects to the sufficiency of this 1959 oral agreement, standing by itself, to create a constructive trust. Here, three points are in order. First, the trial court reached its conclusion not only on the basis of that agreement but also on the conduct of the parties and the circumstances surrounding the conveyance, seen as a whole. As we have already noted, the defendant has failed to sustain his attack on the court's conclusion that a confidential relationship existed. Second, where a confidential relationship has been established, there is substantial authority that the burden of proof rests on the party denying the existence of a trust—and then, by clear and convincing evidence to negate such a trust. See *Suchy* v. *Hajicek,* supra, 510; 89 C.J.S., Trusts,

§ 155.[2] Our decision in *Wilson* v. *Warner,* 84 Conn. 560, 80 A. 718, is not contrary. There, in regard to an alleged resulting trust in a decedent's estate, the court said (pp. 564, 565): "But in all cases where the claimed trust title to land is disputed, the facts from which such trust may be implied should be clearly and satisfactorily established." Third, as this court held in *Dowd* v. *Tucker,* 41 Conn. 197, 205, cited in *Fisk's Appeal,* supra, 440, it is unnecessary to find fraudulent intent for the imposition of a constructive trust. Whether there be fraud at the inception or a repudiation afterward, the whole significance of such cases lies in the unjust enrichment of the grantee through his unconscionable retention of the trust res. See *Dodson* v. *Culp,* 217 Ga. 299, 122 S.E.2d 109; *Kent* v. *Klein,* 352 Mich. 652, 91 N.W.2d 11; Costigan, "Trusts Based on Oral Promises," 12 Mich. L. Rev. 515, 536.

The defendant's argument that the reconveyances in 1960 extinguished his obligation has no support in the finding. Rather, the court's finding of facts concerning his conduct subsequent to the 1960 transfers undermines his position. The court found that the defendant countered the plaintiff's request with delay, pretending concern about the boundaries of his adjacent forty-acre parcel; that he gave, as a reason for refusing to reconvey, assurances that he would never marry and that he would continue to reside with his mother. Of more weight to a court of equity, however, is the fact that the 1960 transfers effected no essential legal or equitable change

---

[2] The same allocation of the burden of proof and a similar standard of proof have been imposed where a claimed gift of realty is contested between persons in confidential relationships. See *McCutcheon* v. *Brownfield,* 2 Wash. App. 348, 356, 467 P.2d 868; 38 Am. Jur. 2d, Gifts, § 106.

in the defendant's initial undertaking. The finding reveals that his interest remained that of a joint tenant with right of survivorship upon the sister's surrender of her title to the plaintiff. Not only has the defendant failed to substantiate his contention, but his claim that the plaintiff's case must fail for lack of a concomitant renewal of the oral agreement in 1960 misconceives the nature of a constructive trust. See the discussion in *Moses* v. *Moses,* 140 N.J. Eq. 575, 580–81, 53 A.2d 805. Indeed, the defendant's assertion could amount to no more than a unilateral attempt to extinguish the original oral agreement. In short, the absence of an express renewal of the defendant's promise does not impair the soundness of the court's conclusion.[3]

Finally, the defendant makes the claim that the plaintiff has unclean hands. There is nothing in the record to suggest that the 1959 transfer was an attempt to defraud creditors or to secrete assets from government agencies. Granted that the plaintiff offered to let her son keep the property in order to dissuade him from taking a wife, it cannot be said, as a matter of law, that her hands are tainted with an attempt to tamper with marriage, especially in view of the defendant's earlier assurances that he would never get married.

In light of the unattacked finding of the court that the defendant in fact had agreed to reconvey the property to the plaintiff upon request and the conclusion of the court, amply supported by the finding of fact, that a confidential relationship existed between the plaintiff and the defendant, the

---

[3] See, in this connection, *Farano* v. *Stephanelli,* 7 App. Div. 2d 420, 183 N.Y.S.2d 707 (promise implied from grantee's silence), and *Kent* v. *Klein,* 352 Mich. 652, 91 N.W.2d 11, commented on in 57 Mich. L. Rev. 923.

case comes squarely within the provisions of § 44 of the Restatement (Second) of Trusts: "Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if . . . (b) the transferee at the time of the transfer was in a confidential relation to the transferor."

There is no error.

In this opinion the other judges concurred.